[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated April 4, 2000, the plaintiff wife, Michelle Thomas, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, custody and support of the minor children, alimony, assignment of property and other relief. The defendant husband, Michael Thomas, appeared pro se to defend the action. On May 17, 2000, Gurrie A. Fandozzi was appointed to represent the interests of the minor children. All the parties appeared with counsel on various dates commencing March 8, 2001 through May 16, 2001, and presented testimony and exhibits. After hearing the testimony and reviewing the exhibits, the court makes the following findings of fact:
The plaintiff wife (whose maiden name was Michelle E. Posa) and the defendant husband were married on April 14, 1973 at St. Mary's, Pennsylvania. The plaintiff wife has resided continuously in the state of Connecticut for one year next preceding the date of filing her complaint. All statutory stays have expired. At the time of the commencement of the dissolution of marriage action, the parties had five minor children born to the wife since the date of the marriage, all issue of the marriage: Leah Thomas, born July 7, 1982; Simon Thomas, born August 6, 1984; Emily Thomas, born September 2, 1986; Aaron Thomas, born March 23, 1988 Heather Thomas, born June 16, 1990. During the pendency of this action, the minor child, Leah Thomas, reached her age of majority but will not graduate from high school until June 2001. No other minor children have been born to the plaintiff wife since the date of the marriage. The court further finds that no state or municipal agency has contributed to the support of the parties and/or their children.
The plaintiff is a 48-year-old high school graduate. After completion of high school, she enrolled in a cosmetology course for one year but failed to complete the hour requirements to obtain a license in the state CT Page 8812-bi of New York. Prior to the birth of her first of ten children, the plaintiffs job history consisted of work at a local drugstore and the cosmetic department at Sears.
After marriage, the plaintiff worked at Dunkin Donuts and left employment at the direction of the defendant. The plaintiff was the homemaker for the family, giving birth to ten children with the first child coming shortly after the marriage with the last child born in 1990. Prior to the commencement of the present dissolution of marriage action by the plaintiff, she worked as a part-time employee in the plant area of a local IGA and a clerk in the cosmetics department in Walgreens. Since she left her job at Walgreens in 1998, the plaintiff has had no employment.
During the pendency of this action, the plaintiff enrolled in a displaced homemaker program at Hartford College for Women but is presently unemployed. The court finds that the plaintiff has not made reasonable efforts to obtain substantial gainful employment since the commencement of the dissolution of marriage action. Venuti v. Venuti,185 Conn. 156, 161 (1981); Lucy v. Lucy, 183 Conn. 230, 234 (1984);Miller v. Miller, 181 Conn. 610, 611-12 (1980). While she should be commended for her efforts to seek training and/or counseling as a displaced adult, she has not made reasonable efforts to find work. The court finds that the plaintiff has an earning capacity at the present time of $270.00 per week. The court makes its finding with the knowledge and understanding of the limited skills presently available to the plaintiff and her lack of formal education beyond high school. The plaintiff is unlicensed to perform cosmetology services for hire. The defendant should not be prejudiced by the wife's failure to seek and find a job. The court is the sole arbiter as to the credibility of the witnesses' testimony. Christini v. Eagen, 129 Conn. 62 (1942). The court finds that the plaintiff has not made reasonable efforts to find a job.
The defendant is also 48 years old and a graduate from high school in upstate New York. Subsequent to his graduation from high school in 1970, he completed two years at the Niagara Community College but presently does not have a college degree. The defendant's employment since completion of his two years in college has culminated in a professional position at CIGNA, Inc. where he has been gainfully employed since 1982. He presently works as a computer programmer director. The defendant has obtained regular increases in pay, bonuses and benefits as a result of his hard work made possible in part, by the yeoman efforts of his wife in raising ten children during the marriage. The court finds that the defendant intends to continue to work at Cigna until retirement. The CT Page 8812-bj court finds that the defendant is working to his earning capacity.
The court finds that through the testimony presented in court and review of exhibits, that the plaintiff has an income in addition to an imputed earning capacity. She also receives tithing from a religious organization in the Buffalo area of New York in the amount of $200.00 per month. She also receives between $80.00 and $100.00 per week from her daughter Leah and $500.00 per month from her son Joseph as regular contributions toward living expenses. The court further finds that the defendant presently enjoys a base salary income of $102,00.00 per year, plus additional bonuses and incentive pay. The defendant has also received stock options and stock grants with the potentiality of more in the future. The court has taken the above in consideration in ordering child support, alimony and/or property division. The defendant husband and plaintiff wife enjoy good physical health. Both the plaintiff and the defendant have suffered emotionally from the strain of the discord in the marital relationship and the legal process involved in terminating their relationship.
The parties met while they were both resident of Niagara Falls, New York. The plaintiff and defendant resided together for one year prior to their marriage. Both came from a family of nine children. After marriage, both parties embarked in a court of marital conduct resulting in the birth of ten children. The plaintiff was either pregnant or nursing for an approximate twenty-year period during their marriage ending with the birth of the last child in 1990. The plaintiff remained home as a homemaker raising the children, cooking and cleaning for the family. The defendant remained the breadwinner working long hours at Cigna, including business trips away from the family. Since the date of the marriage, the parties lived in apartments in Niagara Falls, Buffalo and Indiana, New York. They moved more than ten times before their move to Connecticut in December 1981. By the time the parties moved to Connecticut, they already had five children. The parties bought their first and only home in 1982. The plaintiff presently resides in said home with Leah, Heather, Alicia and John, four of the parties' children plus a grandchild born to Alicia. The defendant presently resides with Simon, Emily and Aaron in a rented home.
The plaintiff related at the time of trial that problems developed early in the marriage before the children were born. She complained that the husband like to party and engaged in sports after suffer, including basketball with friends. She further complained of physical abuse by her husband prior to the birth of the children. She denied contacting the police. The defendant denied the allegations of the plaintiff contending CT Page 8812-bk that the marriage was a good marriage until the birth of the last child.
At the time of the birth of the last child, the plaintiff removed herself from the marital bedroom and refused to engage in any sexual activity with the defendant. The court concludes that the marriage of the parties declined in a free fall from the date of the birth of Heather to the present time. The court concludes that the marriage relationship was acceptable to both the plaintiff and the defendant until 1990. Prior to that date, the court concludes that the plaintiff has exaggerated the marital discord between the parties.
It is also clear from the evidence that Mr. Thomas has had to perform substantial efforts in obtaining sufficient income to meet the minimal needs of a family of ten children. Furthermore, Mrs. Thomas was required to perform hours and hours of household duties and chores to provide minimal comfort, food and clothing for the family from the sums obtained by Mr. Thomas through his employment. The plaintiff further testified that the marriage problems could have been resolved if a line of communication developed between her and the defendant. The defendant could not accept the wife's removal from the marital bedroom.
Since the birth of Heather, the parties' relationship with each other and their children has deteriorated to a point rarely seen by this court. Both parties called their children to testify as to the acts and/or omissions of the other party in relation to conduct with each other, and more importantly, the plaintiffs and/or defendant's conduct with the children. The record is full of complaints by the wife of physical abuse of herself and the children by the defendant. The defendant in turn has had restraining orders issued against his wife, in addition to the restraining orders she had entered against him. The plaintiff filed a previous dissolution of marriage complaint in 1998, which subsequently was dropped.
The present dissolution of marriage complaint has resulted in a trial of accusation on top of accusation brought by one parent against the other. Both parties agree in testimony and final argument that the marital relationship broke down irretrievably commencing from the date the plaintiff left the marital bedroom. The plaintiff testified that the marriage could have been saved if verbal communication had commenced. The defendant testified that he had no marriage with his wife once she failed to engage in future sexual relations. The plaintiff wanted communication; the defendant wanted sex. CT Page 8812-bl
The actions of the parties resulted in substantial monetary debt incurred by the defendant in moving out of the marital residence and establishing a second home where he presently resides with Simon, Emily, and Aaron. The plaintiff has incurred thousands of dollars in attorney's fees owed to two separate counsel. The parties have also incurred substantial debt to counsel for the minor child who has previously been paid a $2,000.00 retainer by the defendant. The parties further owe a first and second mortgage on the marital residence, which has a mere equity of $40,000.00. It is unfortunate that the plaintiff and defendant, through their mutual animus toward the other, have spent thousands of dollars and hundreds of hours that could have best been spent on and with their children.
Prior to trial, the parties stipulated and agreed that the minor child, Heather, and now adult child, Leah, would continue to reside with mother as the primary residential parent. Simon, Emily and Aaron will primarily reside with the defendant. Both parties agreed to joint legal custody. The court has incorporated their agreement into the judgment. The parties, however, disagree as to the issue of visitation leaving that as an additional order for the court to enter.
A substantial part of the trial centered around the issue of ownership of the marital residence. The plaintiff seeks ownership of the marital residence so she can continue to reside there with Leah and Heather. In addition, her children, Alicia, Joseph and Alicia's child would continue to reside in the home and help her with the mortgages and expenses. The plaintiff contends that she will be able to maintain the first and second mortgages, taxes, insurance, maintenance and upkeep on the home with support from her children, tithing and income by way of alimony, child support and employment. The defendant contends that she should have ownership of the marital residence to reside in with Simon, Emily and Aaron. The defendant contends that he is better able to maintain the mortgage debt and property, which is presently in need of additional repairs and capital improvements partially completed prior to his vacating the residence.
The court concludes that the plaintiff will not be able to maintain payment on the mortgage, taxes and insurance, maintenance and improvements necessary to keep the house out of foreclosure postjudgment. The plaintiff, as previously found by the court, has not made reasonable efforts to seek substantial, gainful employment. Without working a forty-hour per week job, the plaintiff cannot maintain and pay the bills and expenses necessary to keep the house even with the inclusion of the CT Page 8812-bm alimony and child support ordered to her as judgment. It is the court's conclusion, after hearing all the testimony and reviewing the documentary evidence submitted, that the defendant has the ability to maintain the house and pay the debts attendant thereto. The court will, however, require the plaintiff to be paid her equity in the marital residence as a precondition to the transfer of her undivided one-half interest in said property. If the defendant fails to make said payment within the time provided below, then the property shall be sold and the net proceeds divided equally.
The court has taken into consideration the cause or causes of the breakdown of the marriage. After synthesizing and analyzing the evidence presented, the court is of the opinion that the plaintiff and defendant are equally to blame in the demise of their marital relationship. The court has taken into consideration the fact that the plaintiff was a devoted mother for ten children and did the best she could in maintaining a household and meeting the daily needs of the children. The court also finds that the defendant was a devoted employee who worked long and hard to obtain the status and income presently received without a college degree. The court further finds and concludes that the parties' lack of devotion to each other and the needs of their respective children for a mother and a father has led to marital problems and family problems too numerous to mention. The physical problems of Heather; i.e., her hearing loss, and the emotional and juvenile court delinquency problems of other siblings were not reasonably attended to by the plaintiff and defendant. The parties' lack of agreement as to sex and/or communication has resulted in the polarization of the children against either parent and the lack of parents' attention to the needs of the minor children presently residing with them.
The court has considered all of the statutory factors concerning custody and visitation §§ 46b-56, 46b-56a and 46b-59. The court has further considered all of the factors in Connecticut General Statutes §§ 46b-62, 46b-66a, 46b-81, 46b-82, 46b-83 and 46b-84 and other pertinent statutes; tax implications, earnings and earning capacity differentials, causes for the breakdown of the marriage and consequences of the financial awards set forth below. The court has jurisdiction in this matter, and the facts set out in the complaint are proven and/or true. Judgement shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
 ORDERS
1. Custody
CT Page 8812-bn
The parties shall have joint legal custody of their minor children. The plaintiff mother shall have primary residential custody of Leah and Heather, and the defendant father shall have primary residential custody of Simon, Emily and Aaron.
2. Visitation
The plaintiff mother shall have reasonable rights of visitation with Simon, Emily and Aaron. The defendant father shall have reasonable rights of visitation with Leah. The father shall have specific visitation with Heather through a reunification plan coordinated by the child's therapist, Patricia Abad, and filed with the court.
3. Relocation
Each party shall give the other notification in writing within ninety days prior to relocation outside of twenty miles from their current residence.
4. Child Support
The defendant father shall pay to the plaintiff mother child support in the amount of $225.00 per week until Leah graduates from high school or attains the age of 19, whichever shall first occur; when the defendant shall pay child support in the amount of $125.00 per week to the plaintiff mother. Said amounts are in conformance with the child support guidelines.
5. Healthcare Expenses for Children
The defendant father shall maintain medical insurance as available through his place of employment for all of the children until each child reaches the age of majority or graduates from high school or attains the age of 19 years old, whichever shall first occur. The party shall pay the first $100.00 per year per child for the child and/or children primarily residing with that parent for any unreimbursed, uncovered and/or copay expense. Thereafter, the plaintiff mother shall pay 30 percent, and the defendant father shall pay 70 percent. Said payments are also in conformance with the child support guidelines.
6. Alimony
(a) The defendant husband shall pay periodic alimony to the wife in the CT Page 8812-bo sum of $350.00 per week until July 1, 2001, when alimony shall be increased to $450.00 per week. Alimony is modifiable as to amount and shall terminate on the first of the occurrence of the following events: (1) death of either party; (2) remarriage of the wife; (3) cohabitation of wife by statute. The periodic alimony order in this paragraph is based upon the plaintiff wife's earning capacity as found by the court and tithing gifts and income received from Joseph and Leah and the defendant husband's annual base income of $102,000.00;
(b) As additional periodic alimony, the defendant shall also pay 35 percent of any annual bonus or incentive pay net of state and/or federal taxes, Medicare, FICA, etc., within ten days receipt thereof;
(c) Said alimony, payable pursuant to the provisions of this paragraph, shall be tax deductible to the defendant and tax includable to the plaintiff.
7. Tax Returns
Each party shall mail copies of their state and federal tax returns including all schedules, W-2's, 1099's, etc. to the other party within seven days of filing. If any party files a request for extension of time, that party shall also mail copies of any W-2, 1099, interest and/or dividend statements to the other party within seven days of filing of said extension request. Said orders are in effect until alimony and child support payments terminate.
8. Motor Vehicles
The plaintiff wife shall have all right, title and interest in and to the 1996 Ford Windstar and Nissan automobile. The defendant husband shall have all right, title and interest in and to the 1988 Plymouth Voyager automobile.
9. CIGNA Pension and 401K
The defendant husband shall transfer to the plaintiff, by way of a qualified domestic relations order, 50 percent of the value of his CIGNA pension accrued benefits as of June 1, 2001. The defendant husband shall also transfer to the plaintiff wife 50 percent of the value of his 401 K plan, valued as of June 1, 2001. The parties are ordered to execute any and all documents necessary to carryout the provisions of this paragraph. The court will retain jurisdiction over the provisions of this paragraph to ensure that the purpose and intent of this order is carried CT Page 8812-bp out and/or if the plan administrator requires amendment of this order to comply with the terms of the pension plan and/or 401 K plan.
10. Stock Options and Stock Grants
(a) Upon the defendant husband's exercise of any stock options issued to him as a consequence of his employment at CIGNA that he presently has or that he may be entitled to or have earned through June 1, 2001, the plaintiff wife shall be entitled to 35 percent of the gross proceeds (minus costs and expenses incurred in exercising said options) in excess of the option price as an additional property settlement, with all income and/or capital gains taxes to be paid by the defendant husband. He shall exercise the above-referenced options as soon after they vest when the option price is less than the then market price.
(b) Upon the defendant husband's receipt of his Restricted Stock Grants from his employer, CIGNA, currently totally 60 shares vesting on February 26, 2002, 85 shares vesting on February 23, 2003, and 105 shares vesting 50 percent on February 28, 2004, 25 percent on February 28, 2005 and 25 percent on February 20, 2006, he shall, within sixty (60) days after his entitlement to the referenced stock, pay to the plaintiff wife 35 percent of the net sales price after deduction of costs and expenses of sale only, as additional property settlement. The defendant husband shall be liable and pay all income and/or capital gains taxes related to said sales.
(c) The defendant husband shall provide to the plaintiff wife on a yearly basis beginning January 1, 2002, documentation from his employer as to the amount and the status of his Stock Options and Restricted Stock Grant entitlements.
11. Life Insurance
The defendant husband shall name the plaintiff wife, to the extent permitted by his employer, as owner and beneficiary of any and all life and accidental death insurance he is entitled to as a consequence of his employment, whether at his current or subsequent employment, until his obligation to pay alimony terminates. Any premium for insurance coverage for life or accidental death insurance at any future place of employment (or if CIGNA charges for said coverage in the future) shall be paid by the defendant husband pending motion to modify and further order of this Court.
12. Counsel Fees: Attorney for Minor Children
CT Page 8812-bq
The defendant father shall pay the balance counsel fees for the attorney for the minor child, Gurrie Fantozzi, Jr., Esq., in the amount of $4,200.00 at the rate of $50.00 per week commencing November 1, 2001.
13. Allowance to Prosecute
The defendant husband shall pay an allowance to prosecute in favor of the plaintiff wife in the amount of $4,000.00 payable to John Harvey, Esq., at the rate of $50.00 per week commencing November 1, 2000. The plaintiff shall be solely responsible for the balance of fees owed to John Harvey and Sam Christodlous.
14. Debts
The husband shall pay the debts listed on his financial affidavit dated April 11, 2001 and hold the wife harmless from any liability thereon. The wife shall pay the debts listed on her financial affidavit day May 16, 2001 and hold the defendant harmless from any liability thereon.
15. Marital Property
The plaintiff wife shall quitclaim all right, title and interest in and to the marital home to the defendant husband within 30 days after payment to the plaintiff wife in the amount of $20,000.00. The plaintiff wife shall be responsible for payment of the mortgage, taxes, insurance, including all utilities (oil, electric, phone, Cable T.V., etc.) until she vacates the marital premises. The defendant husband hereafter shall pay and hold the plaintiff wife harmless from any liability on the first and second mortgage until paid in full and refinanced. The defendant husband shall be entitled to deduct the sum of $1,484.50 from the $20,000.00 due to the plaintiff wife as set out in paragraphs 23 and 24 below and pay to the wife the net sum of $18,515.50, which shall relieve the plaintiff wife from the repayment obligation in said paragraphs.
If the defendant husband fails to pay the plaintiff wife $20,000.00 on or before October 1, 2001, the property shall be sold and the net proceeds divided equally by the parties. The parties are further ordered to list the property for sale at a mutually agreeable price and real estate commission. The court will return jurisdiction over this paragraph to resolve a dispute concerning the listing and/or sale of said marital premises, if the defendant husband does not purchase the interest of plaintiff wife pursuant to the terms and conditions of this paragraph. CT Page 8812-br
16. Personal Property
The parties shall divide all of their other personal property to their mutual satisfaction. If they cannot agree, they shall choose, a mutually agreeable mediator to mediate any dispute or disputes. Each shall pay for the mediator's fees and expenses on a 50/50 basis. If the mediator fails to resolve any dispute, the parties may then return to court for a final resolution.
17. COBRA Insurance
The plaintiff wife shall be entitled to obtain medical insurance through the defendant husband's employer's insurance carrier, pursuant to COBRA at the plaintiff wife's sole expense.
18. Tax Exemption
The defendant husband shall be entitled to take the tax exemptions (state and federal) for minor children, Heather, Aaron, Simon and Emily, unless, due to his earnings, said deductions are not allowable, in which event the plaintiff wife shall be entitled to the same.
19. 2000 Federal and State Refund
The 2000 state and federal income tax refund shall be divided equally by the parties.
20. Scasco Company Oil Bill
The parties equally divide and pay the existing balance to Scasco Company for fuel oil delivered and consumed at the marital home.
21. Lump Sum Merit Payment
The merit pay lump sum presently consisting of $2,400.00 shall be divided equally by the parties.
22. Documents
Each party shall execute and file all documents required in the judgment or reasonably necessary to carry out any and all provisions of this judgment. CT Page 8812-bs
23. Pendente Lite Adjustment Orders
The plaintiff wife shall pay to the defendant husband the sum of $380.00, (overpayment of child support), $794.00 (1999 state and federal income tax credits) for a total of $1,174.00 previously found by the court to be a credit in favor of the defendant in the pendente lite order issued on April 20, 2001.
24. Phone Bill of Plaintiff Charged to Defendant
The phone bill of $621.00 charged by the plaintiff wife to the defendant husband's checking account shall be divided equally resulting in an order requiring the plaintiff wife to pay the defendant husband the sum of $310.50.
Devine, J.
CT Page 8813